UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA

                        Plaintiffs,          **MEMORANDUM & ORDER**

— against —                                  11-CR-5 (SLT)

ROBERT WEHNERT, *et al.*,

                        Defendants.
------------------------------------------------------------X

**TOWNES, United States District Judge:**

      Defendant Robert Wehnert ("Defendant") moves to dismiss the case against him pursuant to Rule 6 (b)(2) of the Federal Rules of Criminal Procedure on the grounds that there were irregularities with the grand jury. Defendants Vito Cortesiano and Bartolomeo Vernace join Wehnert's motion. Defendant Wehnert also moves for his trial to be severed from that of Vernace on the grounds that failure to do so will result in substantial prejudice to Wehnert. For the reasons stated below, the motions are denied.

## BACKGROUND

      Robert Wehnert was indicted on January 7, 2011, and a superseding indictment was filed September 8, 2011. The Special Grand Jury that indicted Defendant began its initial term on March 2, 2009. Memorandum of Law at 1. Defendant argues that the Special Grand Jury received inappropriate multiple term extensions. *Id.* at 2. He argues that the extensions were inappropriate because they were not limited to the business previously begun, but, instead, involved "various unrelated investigations." *Id.* Specifically, the same Special Grand jury indicted Keith Levine and Jianjun Liu in unrelated cases. *Id.* at 1. Defendant additionally argues that "due to the length of time this Special Grand Jury conducted business, it evolved from an impartial group of citizen jurors into an arm of the prosecution." *Id.*

Defendant is one of five men charged in the above-captioned case with a racketeering conspiracy in violation of the 18 U.S.C. §1962(d). Specifically, the superseding indictment in this case charges that Defendant was, "at various time relevant to the superseding indictment," an associate in the Gambino crime family (the "Family") and conspired with four other members of the Family to violate that portion of 18 U.S.C. §1962(c) which makes it unlawful "to conduct or participate, directly or indirectly, in the conduct of [a criminal] enterprise's affairs through a pattern of racketeering activity."

As used in section 1962(c), a "'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. §1961(5). The superseding indictment alleges nine racketeering acts, two of which involve Defendant. Racketeering Act Seven alleges that in or about and between October 1990 and January 2003, Defendant and three co-defendants – Bartolomeo Vernace, Vito Cortesiano, and Anthony Vaglica – together with others, conducted, financed, managed, supervised, directed and owned all or part of an illegal gambling business: a seasonal baccarat game. Racketeering Act Eight alleges that in or about and between October 1990 and January 2003, Defendant, Bartolomeo Vernace, and Anthony Vaglica, conspired with unspecified others to make extortionate extensions of credit in violation of 18 U.S.C. §892(a).

The remaining seven racketeering act involve other defendants. Two of these – Racketeering Acts Two and Three – each allege that Bartolomeo Vernace conspired with unspecified others to commit, and committed, murders of two persons in April 1981. Another – Racketeering Act One – charges that, in 1981, Mr. Vernace conspired with unspecified others to distribute and possess with intent to distribute heroin, and he did distribute and possess with

2

intent to distribute heroin. In addition, Mr. Vernace alone is named in the second count, charging him with brandishing and discharging a firearm during and in relation to the racketeering conspiracy charged in count one.

## DISCUSSION

*Motion to Dismiss pursuant to Rule 6 (b)(2)*

The duty of the special grand jury is "to inquire into offenses against the criminal laws of the United States alleged to have been committed within that district." Title 18, United States Code, Section 3332(a). Title 18, United States Code, Section 3331(a) ("Section 3331(a)") governs the term of the special grand jury:

> The [special] grand jury shall serve for a term of eighteen months unless an order for its discharge is entered earlier by the court upon a determination of the grand jury by majority vote that its business has been completed. If, at the end of such term or any extension thereof, the district court determines the business of the grand jury has not been completed, the court may enter an order extending such term for an additional period of six months. No special grand jury term so extended shall exceed thirty-six months, except as provided in subsection (e) of section 3333 of this chapter.

Similarly, Rule 6 of the Federal Rules of Criminal Procedure provides that "[a] grand jury must serve until the court discharges it, but it may serve more than 18 months only if the court, having determined that an extension is in the public interest, extends the grand jury's service." Fed. R. Crim. Pro. 6(g).

"[G]rand jury proceeding[s] [are] accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process." *U.S. v. Mechanik*, 475 U.S. 66, 75 (1986). "[A] defendant bears a 'strong burden…in challenging the

3

proceedings of the grand jury." *U.S. v. Corbin*, No. 9-CR-354 (SJF) (WDW), 2009 WL 4505513, *4 (E.D.N.Y. December 1, 2009) (citing *United States v. Dzialak*, 441 F.2d 212, 217 (2d Cir. 1971)). Further, "a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250 254 (1988).

Defendant argues that, when a Special Grand Jury's term is extended, the Grand Jury should only continue to investigate matters it had already begun to investigate. This argument relies on a narrow interpretation of "business" as included in Section 3331(a); the jury's business is limited to the one case it began investigating. However, Defendant concedes that while the "predecessor to rule 6(g)...28 U.S.C. § 421...authorized extensions of grand jury terms solely to finish investigations begun but not finished by such grand jury," Rule 6(g) does not currently contain this limiting language. Memorandum of Law at 3 (internal quotation marks omitted).

Further, as the government notes, the investigation which led to Defendant's indictment "commenced in 2008, during the term of the prior special grand jury, and was then continued by the special grand jury that commenced its term in March 2009. The investigation was thus already underway during the initial 18 month term of the special grand jury that indicted Defendant and his co-conspirators on January 7, 2011." Government's Memorandum in Response to the Defendants' Pre-Trial Motions ("Response") at 101-02. Therefore, Defendant's arguments about improper extensions cannot be made as to the special grand jury's investigation of his own case, but only as to extensions to consider other unrelated cases involving Keith Levine and Jianjun Liu.

In addition to failing to adequately support his argument that there were irregularities in the Special Grand Jury's proceedings, Defendant has failed to demonstrate how the alleged irregularities have prejudiced him in any way. He argues that he was "prejudiced due to indictment by a Special Grand Jury that sat for more than 30 months wielding unlimited power to embark on new investigations at any point in its lengthy term and also became a branch of the prosecution." Memorandum of Law at 6. However, the statute clearly allows for a Special Grand Jury to sit for up to 36 months without becoming "a branch of the prosecution." *See* Section 3331(a). The Court rejects Defendant's argument that the length of time that the jury served necessarily means "allegiances...form[ed]" with the prosecution. *Id.* Additionally, Defendant provides no other grounds upon which this Court could find prejudice. Defendants Cortesiano and Vernace, who joined in Defendant's motion, do not provide any additional arguments. Accordingly, the motion to dismiss pursuant to Fed. R. Crim. Prod. 6 is denied.

*Severance*

Defendant seeks to sever his action from that of Mr. Vernace, alleging that he will suffer severe prejudice if they are tried jointly. Defendant's severance issue appears based solely on the possibility of spillover prejudice. Rule 8(b) of the Federal Rules of Criminal Procedure provides that an indictment may jointly charge multiple defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Noting that joint trials "play a vital role in the criminal justice system," because they both promote efficiency and avoid the possibility of inconsistent

verdicts, the Supreme Court has expressed "a preference . . . for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). "Joint trials are often particularly appropriate in circumstances where the defendants are charged with participating in the same criminal conspiracy . . . ." *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003).

Rule 14(a) of the Federal Rules of Criminal Procedure authorizes severance "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government." The decision regarding whether to grant or deny a severance is "committed to the sound discretion of the trial judge." *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir.1989). Severance may be appropriate "when proof inadmissible against a defendant becomes a part of his trial solely due to the presence of co-defendants as to whom its admission is proper." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998) (per curiam). However, "[a] defendant's claim that he was prejudiced by the admission of evidence at a joint conspiracy trial is insupportable when the evidence would have been admissible against him in a separate trial alone as a member of the conspiracy." *Id.* (citing *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993). As the Second Circuit explained:

> A defendant's right to a fair trial does not include the right to exclude relevant and competent evidence. Thus, the fact that testimony against a codefendant may be harmful is not a ground for severance if that testimony would also be admissible against the moving defendant tried separately. Evidence at the joint trial of alleged coconspirators that, because of the alleged conspiratorial nature of the illegal activity, would have been admissible at a separate trial of the moving defendant is neither spillover nor prejudicial.

*Rosa*, 11 F.3d at 341.

6

The Second Circuit has repeatedly held that proof of crimes committed by other participants in a RICO conspiracy is relevant to show the existence and nature of the enterprise. *See, e.g., United States v. Brady*, 26 F.3d 282, 287 (2d Cir. 1994); *United States v. DiNome*, 954 F.2d 839, 843-44 (2d Cir. 1992). Indeed, the Second Circuit has repeatedly found that the introduction of evidence of murders committed by RICO co-conspirators does not create substantial spillover prejudice for a defendant not charged with those murders. *See United States v. Diaz*, 176 F.3d 52, 103 (2d Cir. 1999) (evidence that RICO co-conspirators committed eight murders and other acts of violence, sold narcotics, and maintained and shared weapons for use in their criminal activities did not create substantial spillover prejudice for defendant, who was charged with a single, unrelated murder); *Brady*, 26 F.3d 282, 287 (holding that there was no prejudice from admission of evidence regarding murders as background evidence).

In this case, the proof that Defendant's alleged co-conspirator, Mr. Vernace, committed murders, sold narcotics, and brandished and discharged a firearm in furtherance of Family business would be relevant to show the existence and nature of the alleged criminal enterprise, even if Defendant were tried separately from Mr. Vernace. Accordingly, this Court, in its discretion, finds that no substantial spillover prejudice will result from trying Mr. Vernace and his co-defendants together. This Court will give an appropriate charge to limit any possible prejudice to Defendant and will afford Defendant an opportunity to submit proposed language.

## CONCLUSION

For the reasons set forth above, Defendant Robert Wehnert's pretrial motion is denied. The motions of Vito Cortesiano and Bartolomeo Vernace, adopting Robert Wehnert's arguments as to Special Grand Jury irregularities, are also denied.

**SO ORDERED.**

/s/
SANDRA L. TOWNES
United States District Judge

Dated: April 25, 2012
Brooklyn, New York

8